UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:13CR00164 RWS |
| | ) |
| TIMOTHY ANDERSON, | ) |
| and | ) |
| OSCAR MIMS, | ) |
| | ) |
| Defendants. | ) |

**GOVERNMENT'S TRIAL BRIEF AND RESPONSE TO DEFEDANTS' OBJECTIONS TO EXPERT TESTIMONY[Docs. 796, 800], DEFENDANT MIMS' MOTION IN LIMINE TO PRECLUDE EVIDENCE OF PRIOR CONVICTIONS [Doc. 797]PURSUANT TO FED.R.EVID 404(b) AND DEFENDANT ANDERSON'S VARIOUS MOTIONS IN LIMINE [Docs. 801-804]**

Comes now the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Kenneth R. Tihen, Assistant United States Attorney for said District, and submits the following trial brief, response to defendants' objections to expert testimony and motions in limine as follows:

I.      FACTS

At the trial on this matter, the evidence will show that defendants Anderson and Mims participated in a conspiracy to possess with the intent to distribute heroin. Additionally, defendant Anderson possessed with the intent to distribute heroin on March 14, 2012.

In early 2011, members of the DEA St. Louis Division developed a Confidential Source (CS #1) that provided agents with information and intelligence regarding the drug related activities of codefendant Derrick Miller. Investigators determined that Miller was responsible for distributing quantities of heroin in the St. Louis metropolitan area.

1

Agents obtained court authorization to electronically monitor Miller's phone. During January and February, 2012, Miller's wire calls revealed that he was contacting codefendants Timothy Anderson and Michael Anderson to meet and obtain heroin. Agents then obtained court authorization to electronically monitor phones utilized by Anderson and Johnson.

During the wire intercepts on phones used by Anderson, agents determined that he was making arrangements with codefendant Jose Rivera to obtain additional shipments of heroin.  In March 2012, intercepts revealed that Rivera, who was located in Chicago, was making arrangements to sell additional kilograms of heroin to Anderson in St. Louis. During the intercepts, Rivera and Anderson discussed the fact that Anderson owed Rivera money for kilograms of heroin Rivera had previously supplied. The two also discussed whether Rivera was going to supply additional kilograms of heroin to Anderson for which the money owed would be added to the amount Anderson already owed Rivera. Rivera and Anderson discussed prices, quantities, and the establishment of regular shipments of heroin.

Throughout the wire intercepts, Oscar Mims was identified as a coconspirator who contacted Michael Johnson to secure amounts of heroin for distribution. Frequently Mims was intercepted discussing amounts, prices and payments for heroin obtained from Anderson through Johnson.

On the night of March 14, 2012, Anderson was arrested on his way to deliver heroin to one of his customers. St. Louis police officers seized the heroin from Anderson and he was arrested. Thereafter, Jose Rivera continued to supply Anderson with heroin.

In June 2012, wire intercepts indicated that Rivera was sending his courier to St. Louis with heroin for Anderson. Rivera indicated that the courier would arrive in St. Louis on Friday, June 29, 2012. Anderson confirmed that it was the same courier, "Geico," who had brought

2

heroin to Anderson in the past. "Geico" was identified as codefendant Raul Diaz. Rivera instructed Anderson to let the "old man" know "Geico" would be arriving on Friday. The "old man" was determined to be Fred Walker. Later in the afternoon on June 29, 2012, surveillance agents observed Diaz meeting with Fred Walker in St. Louis.  Walker and Diaz left and drove their vehicles to Walker's house. Agents arrested both Walker and Diaz. Inside the vehicle driven by Diaz from Chicago to St. Louis, an agent located 943.6 grams of heroin. Thereafter, agents intercepted telephone conversations between Anderson and Rivera wherein they discussed the agents' seizure of their heroin from Diaz.

## II.     Legal Issues: Count I

### A.     Elements of the Offense

Count I of the Indictment charges defendants Timothy Anderson and Oscar Mims with conspiracy to possess with the intent to distribute heroin. *See* 21 U.S.C. § 841(a)(1) and 846. The essential elements of this violation are that (1) defendant and at least one other person reached an agreement to distribute or possess with the intent to distribute heroin; (2) defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or some later time while the agreement was still in effect; and (3) defendant knew the purpose of the agreement at the time he joined. *See United States v. Payton*, 636 F.3d 1027, 1043 (8th Cir. 2011); *United States v. Manes*, 603 F.3d 451, 457 (8th Cir. 2010).

"A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." *United States v. Donnell*, 596 F.3d 913, 923 (8th Cir. 2010). In addition, no formal or express agreement is required. *Id*. Rather, the agreement may be tacit and based upon the actions of the defendant and others. *Id*. Proof of an overt act in furtherance of the conspiracy is also not

required. *United States v. Shabani*, 513 U.S. 10, 17 (1994); *United States v. White*, 408 F.3d 399, 401 (8th Cir. 2005).

To be a conspirator, one does not have to be aware of the existence of all other conspirators or all the details of the conspiracy. *United States v. Huggans*, 650 F.3d 1210, 1222 (8th Cir. 2011).  However, the Government must show some element of cooperation beyond mere knowledge of the existence of the conspiracy. *United States v. Slagg*, 651 F.3d 832, 840 (8th Cir. 2011) (finding record was "replete" with evidence of regular cooperation between conspirators from which jury could infer "ongoing, facilitative relationship between parties who were aware of the scope of one another's activities") (quoting *United States v. Roach*, 164 F.3d 403, 412 (8th Cir. 1998)).

Further, a defendant may be criminally liable for any substantive crime committed by a co-conspirator in the course and furtherance of the conspiracy. *United States v. Bowie*, 618 F.3d 802, 815 (8th Cir. 2010). Finally, the Government may rely "wholly on circumstantial" evidence to prove the existence of a conspiracy. *Donnell*, 596 F.3d 913 at 923. A conspirator need not join a conspiracy at its inception.  Each person joining a conspiracy is taken to adopt, and is bound by, the prior acts and statements made in furtherance of the common objective. *See United States v. Foxx*, 544 F.3d 943, 953 (8th Cir. 2008) ("When a defendant joins a conspiracy in its later stages, the concept of foreseeability (a forward looking concept) must be turned around 180 degrees and be applied to the conduct of co-conspirators occurring before the entry of [that] particular defendant") (alterations in original) (internal quotation marks omitted). In fact, "[o]nce the existence of a conspiracy has been established, even evidence connecting a particular defendant to the conspiracy may constitute proof of the defendant's involvement in the scheme." *United States v. Banks*, 706 F.3d 901, 906 (8th Cir. 2013); *see also United States v. Hayes*, 391

4

F.3d 958, 961 (8th Cir. 2004) (once proof of a conspiracy is shown, only slight additional evidence is necessary to connect a particular defendant with it).

### B.     Coconspirator Statements [Docs. 802, 804]

Defendant Timothy Anderson has moved to bar the use of co-conspirator statements, arguing that their admission would violate his right to confront and cross-examine witnesses under the Sixth Amendment.  [Doc. 804].  Additionally, Anderson has moved to bar the "use of wiretapped phone conversations in which defendant is not a party."

Because the Government will show that the co-conspirator statements and wiretapped phone conversations are properly admissible under Federal Rule of Evidence 801(d)(2)(E), Anderson's motions are without merit and should be denied.

Rule 801(d)(2)(E) provides that a statement "made by the party's co-conspirator during and in furtherance of the conspiracy" is not hearsay.  *See Bourjaily v. United States*, 483 U.S. 171, 173 (1987). For a district court to admit a statement pursuant to Rule 801(d)(2)(E), it must "find by a preponderance of the evidence that a conspiracy existed involving the declarant and the party against whom the statement is offered and that the statements were made by the declarant in the course of and in furtherance of the conspiracy." *United States v. Spotted Elk*, 548 F.3d 641, 661 (8th Cir. 2008).

In *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978), the Eighth Circuit established a procedure for the district court to employ when faced with a co-conspirator's statement.  In part, the *Bell* court stated:

> If the prosecutor propounds a question which obviously requires a witness to recount an out-of-court declaration of an alleged coconspirator, the court, upon a timely and appropriate objection by the defendant may conditionally admit the statement.

5

*Bell*, 573 F.2d at 1044.  "A court may conditionally admit a challenged statement subject to later proof to satisfy the coconspirator rule and defer a final ruling on admissibility until after hearing the relevant evidence." *United States v. Roach*, 164 F.3d 403, 409 (8th Cir. 1998).

In order for a coconspirator's statement to be admissible at trial, the existence of the conspiracy and the defendant's and declarant's complicity in it must be proved by a preponderance of evidence. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987*); see also Cowling*, 648 F.3d at 698. In *Bourjaily*, the Supreme Court held that a court may consider the hearsay statements themselves for the purpose of making the preliminary factual findings required by Rule 801(d)(2)(E). *Id*. at 178; *see also United States v. Ragland*, 555 F.3d 706, 713 (8th Cir. 2009).  In addition, the necessary preliminary findings may be supported completely by circumstantial evidence, or a defendant's own conduct and admissions. *Id*. at 181. *See also United States v. Townsley*, 843 F.2d 1070, 1084 (8th Cir. 1988).

The language "during the course and in furtherance of the conspiracy" has been afforded a broad construction under Rule 801(d)(2)(E). *Ragland*, 555 F.3d at 713 (8th Cir. 2009); *United States v. Cazares*, 521 F.3d 991, 999 (8th Cir. 2008).  Since the statements must do more than inform but advance the objectives of the conspiracy, the nature of the statements, along with when and under what circumstances they were made, must be considered. *United States v. Mayberry*, 896 F.2d 1117, 1121 (8th Cir. 1990); *Ragland*, 555 F.3d at 713. Accordingly, the "in furtherance" requirement is satisfied where the statement in question furthers in any way the objectives of the conspiracy. *United States v. Manfre*, 368 F.3d 832, 838 (8th Cir. 2004); *United States v. Guerra*, 113 F.3d 809, 814 (8th Cir. 1997).

Since these statements discuss the source of heroin involved in the conspiracy, as well as the role of the supplier and the defendants' role as dealers, they are made in furtherance of the

6

conspiracy and are admissible coconspirator statements. *See Davis*, 457 F.3d at 825; *Cazares*, 521 F.3d at 999.

"Efforts to conceal an ongoing conspiracy . . . can further the conspiracy by assuring that the conspirators will not be revealed and the conspiracy brought to an end." *Manfre*, 368 F.3d at 838, quoting *United States v. Phillips*, 219 F.3d 404, 419 (5th Cir. 2000).

In addition to the coconspirator statements outlined above, statements involving Anderson, Johnson and Mims and other coconspirators intercepted over court-authorized wiretaps will be offered and are also admissible.  These statements involve the actual implementation and conducting of the conspiracy itself, including the obtaining and distribution of controlled substances and the collection of drug proceeds.

As such, these statements were made during and in furtherance of the conspiracy and thus satisfy the requirements of Rule 801(d)(2)(E).  Moreover, the Confrontation Clause is not implicated by the admission of these statements because they are nontestimonial. *See Crawford v. Washington*, 541 U.S. 36, 56 (2004).  Admission of transcripts of coconspirators' phone calls, made in furtherance of a drug conspiracy does not violate the Confrontation Clause.  *United States v. Olguin*, 643 F.3d 384, 391-92 (5th Cir. 2011); *United States v. Mooneyham*, 473 F.3d 280, 286-87 (6th Cir. 2007); *United States v. Jackson*, 636 F.3d 687, 694 (5th Cir. 2011).

Defendant Anderson's motion in limine to bar the use of such co-conspirators' statements should be denied.

### C.    Narcotics Expert Witness Testimony [Docs. 797, 800]

Defendants Anderson and Mims have filed objections to the proposed expert testimony of DEA Special Agent Steven Hofer [Docs. 797, 800].  Because the proposed testimony of Agent

Hofer is relevant, helpful to the jury and admissible under the Federal Rules of Evidence, these objections are without merit and should be denied.

At trial, the Government plans to introduce expert opinion testimony regarding the importation, distribution, and "street value" of the heroin at issue in this case. Additionally, the Government plans to introduce expert opinion testimony regarding the modus operandi of individuals who traffic in drugs, including typical structures and roles within heroin trafficking organizations. Prior to eliciting the opinion testimony, the Government will qualify its witness as an expert on the basis of his participation in numerous narcotics investigations. In addition to this testimony, some of the law enforcement officers will offer opinion testimony regarding the terminology and method of operations used by drug traffickers. Under the prevailing case law, the Government's anticipated opinion testimony is clearly admissible.

Under Federal Rule of Evidence 702, a qualified witness may testify as an expert, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. A district court may permit law enforcement officers to give expert testimony concerning the *modus operandi* of drug dealers, because most jurors are not familiar with the trade. *United States v. Schwarck*, 719 F.3d 921, 923 (8th Cir. 2013); *United States v. Robertson*, 387 F.3d 702, 704-05 (8th Cir. 2004) ("The business of drug trafficking and the modus operandi of drug dealers are matters unfamiliar to jurors."); *United States v. Gill*, 513 F.3d 836, 847 (8th Cir. 2008). The Eighth Circuit has repeatedly recognized that Rule 702 permits a district court to allow the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding the business of drug trafficking. *Robertson*, 387 F.3d at 704 (citing *United States v. Solorio-Tafolla*, 324 F.3d 964, 965 (8th Cir. 2003)) (expert allowed to testify about "(1) the price of drugs in drug

8

trafficking; (2) drug quantities obtained for personal use; (3) drug conspiracies and roles of drug traffickers; (4) how to manufacture methamphetamine; (5) drug investigation and wiretap operations; and (6) the lack of fingerprint evidence on packaging); *Gill*, 513 F.3d at 847 (agent's testimony assisted the jury in understanding "the business of drug trafficking"). The federal courts as a whole have also routinely permitted law enforcement agents to give expert testimony in a variety of areas concerning drug trafficking.  *United States v. Ham*, 628 F.3d 801, 804 (6th Cir. 2011); *United States v. Jeanetta*, 533 F.3d 651, 657 (8th Cir. 2008) (surveillance techniques and use of "innocuous household items" in drug trafficking schemes); *United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (pattern of one-way airline tickets not purchased in advance); *United States v. Urbina*, 431 F.3d 305, 311 (8th Cir. 2005) (practice and knowledge of drug couriers during transport); *Gill*, 513 F.3d 836 at 847 (link between firearms and drug trafficking); *United States v. Spotted Elk*, 548 F.3d 641, 663 (8th Cir. 2008) (typical use of items involved in manufacture like saran wrap, tin foil and grease); *United States v. Beltran-Arce*, 415 F.3d 949, 951 (2005) (typical drug record-keeping procedures);  *Solorio-Tafolla*, 324 F.3d at 966 (methods of distribution and manufacture).

In this Circuit, it is well settled that narcotics agents may testify as to the nature, quantity and street value of drugs, as they relate to the defendant's intent to distribute. *United States v. Kelly*, 679 F.2d 135 (8th Cir. 1982).  In addition, agents have been permitted to testify as to the quantity of narcotics being indicative of distribution, *United States v. Robertson*, 387 F.3d 702, 704 (8th Cir. 2004), the typical usage amounts of the narcotic, *Solorio-Tafolla*, 324 F.3d at 965, the nexus between drug trafficking and firearms, *Gill*, 513 F.3d at 847, and the meaning of jargon and code words, *Beltran-Arce*, 415 F.3d at 951; *United States v. Delpit*, 94 F.3d 1134,

1145 (8th Cir. 1996) ("There is no more reason to expect unassisted jurors to understand drug dealers' cryptic slang than antitrust theory or asbestosis.").

The Government has offered a jury instruction regarding the evaluation of expert witness testimony that would alleviate any issues regarding the jury's assessment of Agent Hofer's testimony.

Because the proposed expert testimony of SA Hofer is relevant, helpful to the jury's understanding of the issue and clearly permissible under the law, it should be allowed and defendants' objections to it should be overruled.

### D.    Audio Recordings and Transcripts

At trial, the Government will also be introducing recordings of telephone conversations intercepted pursuant to court-ordered wiretaps between co-conspirators in this case.

#### 1.    *Excerpt Calls/Recordings*

As to the wiretap tapes to be offered, their audibility is quite good, but they are voluminous in the number of criminal conversations they contain.  Consequently, excerpts of individual calls and meetings containing representative examples of the defendants' and co-conspirators' criminal conversations will be offered; such excerpts and summary testimony about the same are appropriate. Fed. R. Evid. 1006; *United States v. Segines*, 17 F.3d 847 (6th Cir. 1994); *United States v. Denton*, 556 F.2d 811, 815-16 (6th Cir. 1977) and cases cited therein. *See* 5, WEINSTEIN'S EVIDENCE, p. 1006(06).

#### 2.    *Authenticity of Wiretap Recordings*

The Government will abide by the proper procedure and have the supervisory DEA agent of the wiretaps testify as to the authenticity of all of the wiretap recordings made. The Eighth Circuit in *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974), set forth a *prima facie*

10

test to establish the authenticity of electronic surveillance. This prima facie test includes seven

foundation guidelines, where the Government must show that:

> (1) That the recording device was capable of taking the conversation now offered in evidence.
> (2) That the operator of the device was competent to operate the device.
> (3) That the recording is authentic and correct.
> (4) That changes, additions or deletions have not been made in the recording.
> (5) That the recording has been preserved in a manner that is shown to the court.
> (6) That the speakers are identified.
> (7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

*Id.* The elements of this test are not rigid, but applied with flexibility based on common sense.

*United States v. Webster*, 84 F.3d 1056, 1064 (8th Cir. 1996); *United States v. Roach*, 28 F.3d

729, 733 (8th Cir. 1994).  In *United States v. Scully*, 546 F.2d 255, 269 (9th Cir. 1976), the court

dealt with the question of whether the Government could make its *prima facie* authenticity

showing without producing all of the monitoring agents. In this decision, the court held that this

was permissible when agents with knowledge of the surveillance testified. *Id.*

In *United States v. Cortellesso*, 663 F.2d 361 (1st Cir. 1981), *Scully* was taken to its

logical conclusion. The First Circuit in *Cortellesso* found that the supervisory agent of court-

authorized wiretaps could make the *prima facie* showing by testifying as to the elements of the

*McMillan* test. 663 F.2d at 364. This procedure has since been followed by courts across the

country. *See United States v. Rengifo*, 789 F.2d 975, 978 (1st Cir. 1986); *United States v. Millan*,

817 F. Supp. 1072 (S.D.N.Y. 1993); *United States v. Green*, 175 F.3d 822, 830 (10th Cir. 1999).

Because the Eighth Circuit has no foundational requirement that all wiretap monitoring agents

testify, and courts across the country allow a single supervisory agent to lay the foundational

requirements for wiretap recordings, it is proper for the supervisory DEA agent to authenticate

all of the wiretap evidence.

### 3.      *Use of Transcripts [Doc. 803]*

Defendant Anderson has moved to bar the Government's use of wiretap transcripts at trial on the basis that they "invade the province of the jury as the proper finder of fact."  [Doc. 803, p. 1]  The transcripts will assist the jurors in understanding and following the conversations to be played and the Court should exercise its discretion to allow them to be presented to the jury.

The Government plans to introduce transcripts of all of the conversations played. In the Eighth Circuit, the decision to allow the use of transcripts to assist jurors in listening to a tape recording lies within the sound discretion of the district judge. *United States v. Chavez-Alvarez*, 594 F.3d 1062, 1069 (8th Cir. 2010); *see also United States v. Placensia*, 352 F.3d 1157, 1165 (8th Cir. 2003) (noting trial court's discretion to admit transcripts of foreign language transcripts even without tape recordings). Transcripts in the jury room will generally not be considered cumulative when they assist the jury in evaluating the evidence. *Id*. at 1069.

The use of transcripts aids the jury in a number of ways. First, transcripts help the jurors follow often poor-quality recordings. *United States v. Riascos*, 944 F.2d 442, 443 (8th Cir. 1991). These transcripts also help the jurors identify speakers. *United States v. Henneberry*, 719 F.2d 941, 949 (8th Cir. 1983). Additionally, transcripts assist the jury when portions of the recording are inaudible. *United States v. Willis*, 774 F.2d 258, 259 (8th Cir. 1985). Finally, transcripts also aid the jury in understanding colloquialisms in the conversation. *United States v. Delpit*, 94 F.3d 1134, 1148 (8th Cir. 1996). Because each of these considerations apply in the case at bar, the jury should be allowed access to the transcripts of all conversations played.

The trial court should allow the use of transcripts only after each party has had an opportunity to verify the accuracy of the recordings and provide their own transcript. *United*

*States v. Britton*, 68 F.3d 262, 264 (8th Cir. 1995). Foundationally, the person who prepared the contents. *United States v. Bentley*, 706 F.2d 1498, 1507 (8th Cir. 1983); *United States v. Frazier*, 280 F.3d 835, 849 (8th Cir. 2002). However, the Eighth Circuit does not mandate that the foundation for the transcripts be laid by the person who prepared the transcripts, but it may be established by a person who was a party to the conversations. *United States v. Gordon*, 688 F.2d 42, 44 (8th Cir. 1982); *Frazier*, 280 F.3d at 849-50.

The Court must instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript and that "any discrepancies [from the transcript] should be resolved in favor of what they heard on the tapes." *United States v. Scott*, 243 F.3d 1103, 1107 (8th Cir. 2001). However, once admitted into evidence and given the proper cautionary instruction, the transcripts may be used by the jury in their deliberations. *United States v. Foster*, 815 F.2d 1200, 1203 (8th Cir. 1987); *Chavez-Alvarez*, 594 F.3d at 1069.

In light of the foregoing, the Court should deny defendant Anderson's motion in limine to bar use of wiretap transcripts.

### 4.    *Joint Presentation of Audio & Transcripts*

The Government intends to play the audio of telephone calls while a rolling transcript of the call appears on the court monitors. There will be a highlighted portion of text rolling and synched to the audio file. This is an aid to assist the jury in identifying the speakers and following the conversation.

13

**5.      *Interpretation of Wiretap Calls [Docs. 797, 800]***

As mentioned above, defendants Anderson and Mims have filed objections to DEA

Special Agent Hofer's testimony regarding the interpretation of wiretap calls.  [Docs. 797, 800]

These objections are meritless and should be overruled.

After the wiretap recordings are played, the government intends to ask the respective

agents, including Agent Hofer, to summarize and/or interpret the conversations, many of which

contain coded language. As demonstrated below, this has been recognized as a proper procedure

and defendants' objections to it are unfounded.

***An Investigating Agent Qualified as an Expert Witness May Interpret for the Jury Language
Related to Drug Activity***

After recordings of wiretap calls are played to the jury, the government intends to ask the

agent to summarize and/or interpret the conversations, many of which contain coded language.

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized
>> knowledge will help the trier of fact to understand the
>> evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and
>> methods; and
>> (d) the expert has reliably applied the principles and
>> methods to the facts of the case.

At trial, the government will move to qualify Drug Enforcement Administration (DEA)

Special Agent (SA) Steve Hofer as an expert. Special Agent Hofer is a Special Agent with the

DEA who has been involved in the investigation of the instant case since 2010. As such, Special

Agent Hofer has extensive knowledge of the conspiracy's structure and organization. Special

Agent Hofer has also conducted and/or attended interviews with co-conspirators who have

provided invaluable first-hand information regarding the defendants and their business undertaking.

Clearly, Special Agent Hofer has, by virtue of his "skill, experience, [and] training" acquired "specialized knowledge" as to the business transactions of the defendants that will "help the trier of fact to understand the evidence." Fed. R. Evid. 702.  This information is "based on sufficient facts or data," and "is the product of reliable principles and methods" such as other law enforcement sources, informant de-briefings, recorded conversations, and interviews. Moreover, Special Agent Hofer "has reliably applied the principles and methods to the facts of the case." Under these circumstances, Fed. R. Evid. 702 provides that such a witness should be permitted to "testify in the form of an opinion or otherwise."

"It is well established that experts may help the jury with the meaning of jargon and code words." *United States v. Delpit*, 94 F.3d 1134, 1145 (8th Cir. 1996). This Court has stated that "[t]here is no more reason to expect unassisted jurors to understand drug dealers' cryptic slang than antitrust theory or asbestosis."  *Id*.; *see also United States v. Farmer*, 543 F.3d 363, 370 (7th Cir. 2008) ("[N]arcotics code words are an appropriate subject for expert testimony, and [ ] law enforcement officers who have training and experience in drug-related transactions and crimes are qualified to testify as an expert concerning the practices of people engaged in that type of conduct"); *United States v. Tocco*, 200 F.3d 401, 419 (2d Cir. 2000) ("[E]vidence regarding the inner-workings of organized crime has been held to be a proper subject of expert opinion because such matters are 'generally beyond the understanding of the average layman.'").

***Special Agent Hofer Will Properly Provide Expert Testimony Under Federal Rule of Evidence 702 Because His Testimony Will Be Based on Knowledge, Skill, Experience, Training or Education***

The Eighth Circuit court of appeals has explicitly held that "[l]aw enforcement officers may testify as experts concerning the modus operandi of drug dealers as such activities are not

something with which most jurors would be familiar. Significantly, the Eighth Circuit has held that experts may help the jury with the meaning of jargon and code words." *United States v. Placensia*, 352 F.3d 1157, 1164-65 (8th Cir. 2003) (citing *United States v. Brown*, 110 F.3d 605, 610 (8th Cir. 1997)); *Delpit*, 94 F.3d at 1145). Under this Court's decisions in *Delpit* and *Placensia*, SA Hofer is authorized to interpret all of the "drug dealers' cryptic slang," not merely "common drug terminology." *Delpit*, 94 F.3d at 1145. Interpretation testimony is allowed where "the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding the business of drug trafficking." *United States v. Robertson*, 387 F.3d 702, 704 (8th Cir. 2004). This broad standard will encompass SA Hofer's testimony in this case.

It is anticipated that Special Agent Hofer will testify that his interpretations are based on training and experience from 10 plus years in law enforcement with the DEA.

Furthermore, SA Hofer will base his testimony by using his training and experience to interpret context and how that context informed the meaning of specific jargon and code terms. *See United States v. Galloway*, 749 F.3d 238, 243-46 (4th Cir. 2014) (finding no plain error when agents interpreted coded words through their context in the conversation); *United States v. York*, 572 F.3d 415, 424 (7th Cir. 2009) ("Experts can determine, based on their expertise, that certain words have drug-related meanings with the context of a single conversation."); *United States v. Freeman*, 498 F.3d 893, 899, 902 (9th Cir. 2007) (court did not err in allowing expert interpretation of coded words based on context, even when the agent had not heard the words before); *United States v. Wilson*, 484 F.3d 267, 275, 278 (4th Cir. 2007) (district court properly admitted interpretation testimony when the agent explained that he was able to identify a word's meaning by listening to a number of drug-related conversations in context). Under this

precedent, SA Hofer may interpret Anderson and his associate's coded language and jargon by applying his knowledge, experience, and training to the language in its context.

In *United States v. Moralez*, 808 F.3d 362, 365-67 (8th Cir. 2015), the Eighth Circuit addressed the risks and necessary precautions that should be taken when an investigating agent testifies as both a fact witness and an expert. In *United States v. Dukagjini,* 326 F.3d 45 (2d Cir. 2003), the Second Circuit noted several risks associated with this type of testimony.  However, other circuits have identified steps district courts may take to lessen the risks involving this type of testimony. *United States v. Vera,* 770 F.3d 1232, 1243 (9th Cir.2014); *United States v. Lopez–Medina,* 461 F.3d 724, 745 (6th Cir.2006) (the use of cautionary instructions to the jury on how to evaluate dual-role testimony). Additionally, the trial court can monitor counsel's questioning of the witness so that the jury is aware of which type of testimony is being offered. *United States v. Jones,* 763 F.3d 777, 803–04 (7th Cir. 2014). Counsel's questioning can also make a clear transition between roles when laying foundation (*e.g.,* "I'd like to shift gears here a little bit and talk about some of your education, professional training, and law enforcement experience."). *United States v. Anchrum,* 590 F.3d 795, 804 (9th Cir. 2009). The Eighth Circuit stated in *Moralez* that "no circuit… has categorically prohibited the use of dual-role testimony by case agents, and failure to take these precautions has only occasionally merited reversal." *Moralez*, 808 F.3d at 366. The Eighth Circuit held in *Moralez* that "counsel should take appropriate measures to minimize the problems that may arise from dual-role testimony by a case agent…" *Id.*

In the present case the government will make clear the type of testimony Agent Hofer is offering by identifying his expert testimony referencing his "experience" and/or training" when asking about drug jargon which will identify for the jury the basis for Agent Hofer's answers,

17

Additionally the government will offer an instruction at the end of trial on how to weigh expert testimony. These precautions alleviate any of the potential issues identified in defendants' objections to Agent Hofer's testimony.  Accordingly, those objections should be overruled.

### E.       Use of Mims' Prior Convictions [Doc. 796]

Defendant Mims has filed a motion in limine to exclude evidence of his prior drug convictions.  [Doc. 796]  Because these convictions are admissible pursuant to Federal Rule of Evidence 404(b), the motion is without merit and should be denied.

In its case-in-chief, the Government intends to introduce evidence of defendant Oscar Mims prior convictions for: (a) Possession with the Intent to Distribute over 50 grams of cocaine base (Count One), in Case No. 4:96CR 153 SNL in the United States District Court for the Eastern District of Missouri on January 31, 1997[1] and (b) Trafficking Second degree, (cocaine base) in Case No. 03CR-3776 in the Circuit Court of St. Louis County, Missouri on March 7, 2005[2].

This Court reviews the district court's admission of defendants' prior convictions under Rule 404(b) for abuse of discretion, *United States v. Trogdon*, 575 F.3d 762, 766 (8th Cir. 2009), and will disturb a district court's decision only when the evidence clearly had no bearing on the case and was introduced for the sole purpose of proving defendants' propensity to commit criminal acts.  *United States v. Reynolds*, 720 F.3d 665, 670 (8th Cir. 2013).  This Court affords great deference to the district court's weighing of the probative value of the evidence against its prejudicial effect.  *United States v. Gant*, 721 F.3d 505, 510 (8th Cir. 2013).

---

[1] According to the pretrial services report defendant Mims' term of supervised release was revoked on March 30, 2010. Supervised release was completed on March 29, 2013
[2] According to the pretrial services report defendant Mims' was sentenced to 15 years imprisonment and on parole at the time of the offense.

18

### Rule 404(b) is a "Rule of Inclusion"

Rule 404(b) provides in applicable part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . .

Fed. R. Evid. 404(b).  In *Huddleston v. United States*, 485 U.S. 681 (1988), the Supreme Court adopted an inclusive approach to evaluating the admissibility of Rule 404(b) evidence.  The *Huddleston* Court found that in enacting Rule 404(b), "Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was *with ensuring that restrictions would not be placed on the admission of such evidence*."  *Id.* at 688-89.  (Emphasis supplied.)    Echoing *Huddleston*, this Court routinely instructs that Rule 404(b) is "one of inclusion, such that evidence offered for permissible purposes is presumed admissible absent a contrary determination."  *United States v. Wilson*, 619 F.3d 787, 791 (8th Cir. 2010) (quoting *United States v. Littlewind*, 595 F.3d 876, 881 (8th Cir. 2010)).  *See, e.g., United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011) (same); *United States v. Thomas*, 593 F.3d 752, 757 (8th Cir. 2010) (same); *United States v. Koski,* 424 F.3d 812, 817 (8th Cir. 2005) (Rule 404(b) is rule of inclusion, rather than exclusion, which allows the admission of other crimes evidence relevant to any issue in the trial other than the criminal disposition of the defendant).

### Admissibility of Rule 404(b) Evidence

Rule 404(b) evidence is admissible if it is:  (1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; (3) supported by sufficient evidence and (4) higher in probative value than prejudicial effect. *United States v. Gant*, 721 F.3d 505, 509 (8th Cir. 2013).

### a.     Relevance

Where, as here, defendant present a general denial defense and necessarily place their state of mind at issue, prior felony drug convictions are relevant to show intent and knowledge. *United States v. Banks*, 706 F.3d 901, 907 (8th Cir. 2013).  In drug conspiracy prosecutions, this Court routinely admits evidence of prior drug activity or convictions for such crimes as possession or sale of controlled substances.  *See, e.g., Banks*, 706 F.3d at 906 (admission of prior conviction for possession of marijuana in prosecution for conspiracy to possess controlled substance with intent to distribute); *United States v. Jefferson*, 725 F.3d 829, 836 (8th Cir. 2013) (admission of guilty plea for possession of cocaine with intent to distribute admissible in prosecution for conspiracy to distribute cocaine as prior convictions for distributing drugs - and even user-quantities of controlled substances - are relevant to show knowledge and intent to commit drug conspiracy); *United States v. Robinson*, 639 F.3d 489, 494 (8th Cir. 2011) (same); *United States v. Thompson*, 690 F.3d 977, 990 (8th Cir. 2012) (admission of prior arrest for drug trafficking in prosecution for conspiracy to possess cocaine with intent to distribute). When prior convictions are admitted for the purposes of demonstrating knowledge or intent, they "need not be duplicates" of the current charge, but only "sufficiently similar to support an inference of criminal intent." *United States v. Thomas*, 398 F.3d 1058, 1063 (8th Cir. 2005) (internal quotations omitted). Applying this standard, the Eighth Circuit has consistently held that "evidence of prior possession of drugs, even in an amount consistent with only personal use, is admissible . . . [against] a defendant charged with a crime in which intent to distribute drugs is an element." *United States v. Franklin*, 250 F.3d 653, 658 (8th Cir. 2001) (internal quotations omitted), *United States v. Hardy*, 224 F.3d 752, 757 (8th Cir. 2000), *Unites States v. Logan*, 121 F.3d 1172, 1178 (8th Cir. 1997). Like the defendants in each of these holdings Mims has prior

convictions for the narcotics related offenses. Based on these comparisons, the prior convictions are sufficiently similar to his current charges of being involved in a drug distribution conspiracy.

Further, this Court has found that Rule 404(b) evidence is particularly relevant in conspiracy cases:

> In conspiracy cases, like this one, in which the government is required to prove the existence of an agreement between the conspirators, the government has considerable leeway in offering evidence of other offenses.  'Considerable leeway' is not, however, a special 404(b) standard for conspiracies, but rather inheres in the government's burden to prove additional offense elements – an agreement, voluntarily and intentionally reached, with the purpose of violating the law – that are not present in non-conspiracy cases.  The addition of those elements makes additional acts of the defendants – including, in many cases, uncharged 'bad' acts – relevant to proving the charged offense, not by way of improper propensity reasoning, but as proof of existence of the conspiracy.

*United States v. Maxwell*, 643 F.3d 1096, 1100 (8th Cir. 2011) (internal citations and quotations omitted).

### b. *Similar in kind and not overly remote in time to the crime charged*

This Court applies a reasonableness standard and examines the facts and circumstances of each case to determine if Rule 404(b) evidence is too remote, *United States v. Strong*, 415 F.3d 902, 905 (8th Cir. 2005), and there is no fixed period during which the prior acts must have occurred.  *United States v. Baker*, 82 F.3d 273, 276 (8th Cir. 1996).

Similarly, this Court has approved periods of:  eighteen years, where defendant was incarcerated for ten years of intervening period, *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006); sixteen years, *Strong,* 415 F.3d at 906; fifteen years prior to charged conduct and where defendant's intervening years in custody undercut his challenge to temporal remoteness, *United States v. James*, 564 F.3d 960, 963 (8th Cir. 2009);  fifteen years before trial and ten years prior to charged conduct, *United States v. Yielding*, 657 F.3d 688, 702 (8th Cir. 2011); ten years prior to charged conduct, *Banks*, 706 F.3d at 906-07; *but see United States v. Aldridge*, 664

21

F.3d 705, 713-15 (8th Cir. 2011) (while twelve-year-old and five-year-old convictions were admissible, it was harmless error to admit nineteen and twenty-year-old convictions).

###### c.      *Supported by sufficient evidence*

Defendant's prior convictions also meet the third element of the Rule 404(b) analysis because they are supported by sufficient evidence. Under Rule 404(b), the Government must prove the prior convictions by "a preponderance of the evidence." *United States v. Vega*, 676 F.3d 708, 719 (8th Cir. 2012). This burden will be met if the Government offers certified copies of the defendant's convictions. *See United States v. Strong*, 415 F.3d 902, 906 (8th Cir. 2005) (holding that the government provided sufficient evidence of the defendant's prior convictions where a special agent identified certified copies of the convictions). To meet this burden, the Government is allowed to introduce a certified copy of the defendant's prior conviction through a case agent handling the case at bar. *Id.* at 904-06; *United States v. Walker*, 470 F.3d 1271, 1274-75 (8th Cir. 2006) (holding that the government properly provided evidence of the defendant's prior conviction by having an agent, who had no connection with the prior conviction, introduce a certified copy of the prior conviction). Because the Government intends to introduce certified copies of the defendant's prior convictions through an agent who has thoroughly investigated the case at hand, the third element of the Rule 404(b) analysis is met.

###### d.      *Prejudice*

While damaging evidence is always prejudicial, the issue with respect to Rule 404(b) evidence is whether it is <u>unfairly</u> prejudicial.  *Gant*, 721 F.3d at 510.

As observed above, this Court affords great deference to the district court's weighing of the probative value of the evidence against its prejudicial effect.  <u>Id.</u>

This Court looks to such criteria as relevance, remoteness and substantive similarity of the

crimes to determine whether unfair prejudice exists.  *See, e.g., Banks*, 706 F.3d at 907.  The potential for unfair prejudice is reduced where, as here, the district court gives a limiting instruction which instructs the jury to consider this evidence only as it relates to the issues of knowledge and intent.  *Id.; United States v. Gaddy*, 532 F.3d 783, 790 (8th Cir. 2008).

Because the defendant's prior convictions are incredibly probative, and the risk of prejudice is greatly reduced by a cautionary jury instruction, these convictions are admissible under Rule 404(b).

### F.      Evidence of Any Disposition of Codefendants' Cases [Doc. 801]

Defendant Anderson has moved to prevent any evidence regarding the pleas of guilty of co-defendants which admit to the existence of the charged conspiracy.  [Doc. 801]  It is true that one person's guilty plea or conviction may not be used as substantive evidence of the guilt of another.  *See United States v. Wadlington*, 233 F.3d 1067, 1077 (8th Cir. 2000) (citing *United States v. Wiesle*, 542 F.3d 61, 62 (8th Cir. 1976)).  At this time, the Government does not intend to admit such evidence in its case in chief, so the Court may deny this motion as moot.

However, sometimes evidence that would otherwise be inadmissible may be used to clarify an issue that was opened up by the defense on cross-examination.  *See United States v. Braidlow*, 806 F.2d 781, 783 (8th Cir. 1986).  Accordingly, to the extent either defendant would open the door to the admission of such evidence, the Government would seek a ruling from the Court as to whether it could admit this evidence to refute defense allegations or otherwise respond to the issue having been raised.

### III.      Defendant Anderson's *Pro Se* Representation

### A.      Defendant is Held to the Same Standards as an Attorney

A defendant who proceeds *pro se* does so with no greater rights than a defendant represented by a lawyer, and the trial court is under no obligation to become an advocate for or to assist a *pro se* defendant in any way. In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court conclusively stated that a defendant has the right to represent himself. *Id.* at 819. However, the Court also clearly held that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta*, 422 U.S. at 833; *United States v. Mabie*, 663 F.3d 322, 328 (8th Cir. 2011), *United States v. Mosley*, 607 F.3d 555, 558 (8th Cir. 2010), *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984). *Pro se* defendants must follow all "ground rules," including formulating questions correctly. *Faretta*, 422 U.S. at 835. Indeed, a *pro se* defendant is held to the same obligations and standards as any attorney appearing before the court, and any improper statements and arguments should be stricken from the record. *United States v. Manjarrez*, 306 F.3d 1175, 1179-80 (1st Cir. 2002).

The District Court is under no obligation to act as counsel to a *pro se* litigant. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). The constitution does not provide *pro se* defendants with a right to receive personal instruction from the trial judge on procedure, because such a right or requirement would undermine the district judge's role as an impartial decision maker. *Id.*

For these reasons, the Defendant should be required to comply with all applicable rules of evidence, procedure, decorum, and the local rules of the Eastern District of Missouri.

### 1.     *Defendant May Not Testify Without Taking the Stand*

Although the defendant is entitled to represent himself, he should not be permitted to use his *pro se* representation as a subterfuge to testify or present evidence without being subject to cross-examination. For example, in *United States v. Oglesby*, 764 F.2d 1273 (7th Cir. 1985), the

Seventh Circuit held that a *pro se* defendant should be warned not to speak in the first person in his comments on the evidence and that the jury should be carefully instructed that nothing the *pro se* defendant says in his capacity as a "lawyer" should be considered as evidence. *Id.* at 1276. Accordingly, the Government requests that this Court warn the Defendant not to speak in the first person while commenting on the evidence, and additionally requests an instruction notifying the jury that nothing Defendant says in his capacity as a "lawyer" should be considered as evidence.

### 2.    *Revocation of the Right of Self Representation*

The right of self-representation is not absolute. "[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975); *see also United States v. Mosley*, 607 F.3d 555, 558 (8th Cir. 2010). "A defendant is not entitled to use the right of self-representation as a tactic for delay, for distortion of the system, or for manipulation of the trial process." *Mosley*, 607 F.3d at 558 (citing *United States v. Edelmann*, 458 F.3d 791, 808-9 (8th Cir. 2006) (internal quotations omitted)).

## IV.    Legal Issues: Count Seven

In addition to the conspiracy charge, defendant Timothy Anderson is charged in Count Seven with knowing and intentional possession with the intent to distribute heroin. *See* 21 U.S.C. § 841(a)(1). In order to prove this offense, the Government has to establish beyond a reasonable doubt that the defendant (1) knowingly (2) possessed heroin (3) with the intent to distribute it. *See United States v. Marquez*, 462 F.3d 826 (8th Cir. 2006).

The evidence at trial will demonstrate beyond a reasonable doubt that defendant Anderson is guilty of Count Seven.

## V.      Conclusion

The foregoing are the issues that the Government expects to arise in the trial of this matter.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney


*/s/Kenneth R. Tihen*
KENNETH R. TIHEN #37325 MO
Assistant United States Attorney
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200



CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record, including J. Christian Goeke, standby counsel for defendant Timothy Anderson and

Timothy Anderson
St Louis County Department-Justice Services
100 South Central Avenue
St. Louis, Missouri 63105




*s/Kenneth R. Tihen*
KENNETH R. TIHEN, 37325MO
Assistant United States Attorney